UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-CR-20460-HUCK/LOUIS

UNITED STATES OF AMERICA

v.

JOHN DOE, a/k/a "CARLOS EMILIO
OBREGON CORTES,"

     Defendant.

_____/

## GOVERNMENT'S OBJECTION TO THE PRE-SENTENCE INVESTIGATION

The United States, by and through the undersigned Special Assistant United States Attorney, formally objects to the Presentence Investigation Report (PSR). Specifically, the government contests the restitution amounts calculated in paragraph 17, objects to the conclusion in paragraph 36 that the defendant qualifies as a zero-point offender, and objects to the omission of a two-level enhancement for the use of sophisticated means.

**I. OBJECTION TO PARAGRAPH 17: THE GOVERNMENT PROVIDED DEFINITIVE RESTITUTION AMOUNTS AND SUPPORTING EVIDENCE.**

The United States objects to the conclusion in paragraph 17 of the Pre-Sentence Investigation Report (PSI) stating that the government has not provided potential restitution amounts. This finding is factually incorrect and directly contradicted by the record. The government has definitively established both the program losses to federal agencies and the personal out-of-pocket losses suffered by the individual victim, "C.E.O.C."

First, the government notes that the defendant executed a formal, binding factual proffer admitting to his fraudulent schemes and the exact losses resulting from his conduct [DE # 24]. The

restitution amounts owed to federal programs are undisputed based on the defendant's own admissions. These amounts are as follows:

1. Social Security Administration (SSA) Loss: The defendant admitted that from on or about February 2021 through August 2025, he knowingly received, converted, and misused Social Security benefit payments for his own use. This resulted in a loss total of $105,057.90.

2. Medicare / Health and Human Services (HHS) Loss: The defendant admitted that from on or about April 15, 2021, he utilized the same stolen identity to fraudulently enroll in Medicare. As a direct result of his false pretenses, Medicare paid $108,057.63 to providers on the defendant's behalf.

Second, the government notes that it provided certified agency records from both the SSA and HHS confirming these exact, finalized loss amounts totaling $213,115.53 (See Exhibit A, Certified Agency Records).

Finally, pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, the victim is legally entitled to compensation for all necessary out-of-pocket expenses incurred while participating in the investigation and remediating the fraud. The government provided a comprehensive Victim Impact Statement from the individual victim, C.E.O.C., detailing the extensive financial, administrative, and personal devastation caused by the defendant's long-term exploitation of his identity (See Exhibit B, Victim Impact Statement). In his victim impact statement, the victim wrote that he personally expended over 120 hours of uncompensated time and significant out-of-pocket financial resources, trying to resolve the collateral consequences caused due to the defendant's actions. To quantify this loss without forcing an undue evidentiary burden on the court, the government requests a standard valuation of the victim's lost time. In the

absence of a verified specific hourly wage, courts look at the regional median hourly earnings or the prevailing federal standard. The government suggests utilizing the Bureau of Labor Statistics (BLS) national median hourly wage for all occupations which results in a baseline standard rate of $33.14 per hour for Ohio, where the victim resides. *See* U.S. Bureau of Labor Statistics, *May 2025 State and Metro Area Employment, Hours, & Earnings: Ohio* (last visited May 14, 2026), bls.gov. Thus, using the calculation of 120 hours × $33.14/hour would result in $3,976.80 to compensate him for the estimated 120 hours.

The victim has also reported to the government that he incurred direct costs compiling documents, printing over 300 pages of forms at the local library at an cost of 10 cents per page ($30.00), and purchasing stamps and postage ($10.00) to mail physical proof of identity to credit bureaus and government offices for an expenditure of $40.00. The victim was also forced to drive a minimum of 174 to 208 miles to physically resolve fraud blocks. This included 8 to 10 round trips to his local SSA office (112–140 miles), multiple visits to local bank branches (18–24 miles), and two round trips to the Ohio Bureau of Motor Vehicles to secure a corrected driver's license (44 miles). Utilizing the standard 2026 IRS business mileage rate of 67.0 cents per mile, this equates to an additional restitution claim between $116.58 and $139.36 (or alternatively, the standard GSA medical/moving rate if preferred by the Court).

Consequently, the government has fully met its burden of proof regarding restitution by providing exact figures backed by the defendant's signed proffer, certified agency calculations, and the victim's statement. The United States respectfully requests that paragraph 17 be amended to strike the statement that numbers were not provided, and instead incorporate a mandatory restitution order reflecting $213,115.53 to the federal agencies, alongside full calculated compensation for C.E.O.C.'s 120+ hours of lost time and associated out-of-pocket expenses.

**II. OBJECTION TO PARAGRAPH 36: THE DEFENDANT IS INELIGIBLE FOR THE ZERO-POINT OFFENDER ADJUSTMENT UNDER U.S.S.G. § 4C1.1**

The United States objects to the conclusion in paragraph 36 that the defendant qualifies for a two-level decrease in the offense level as a zero-point offender. While the defendant may have zero criminal history points under Chapter Four, Part A, he fails to satisfy all the mandatory exclusionary criteria required by the statute. Specifically, U.S.S.G. § 4C1.1(a)(6) explicitly bars a defendant from receiving this adjustment if they "personally caused substantial financial hardship" to a victim.

To evaluate whether a defendant's conduct resulted in substantial financial hardship, U.S.S.G. § 4C1.1(b)(3) directs the Court to consider, among other things, the non-exhaustive list of factors outlined in Application Note 4(F) of the Commentary to U.S.S.G. § 2B1.1. Under these factors, the defendant's theft of the victim's identity and Social Security Number directly caused devastating, long-term financial consequences that far exceed standard theft. Here, in exact accordance with U.S.S.G. § 2B1.1, Application Note 4(F)(vi), the defendant's fraudulent activities caused the victim to suffer substantial harm to his ability to obtain credit. The defendant's actions directly ruined the victim's credit rating, forcing the victim into a state of severe financial distress. The victim's ruined credit score functions as a barrier to standard life necessities, effectively rendering him insolvent from major credit markets and preventing access to housing, lines of credit, or loans causing immediate instability to the victim's livelihood.

Moreover, through his actions, the defendant permanently intertwined the victim's name and identity with systematic federal fraud. The defendant actively executed his criminal schemes, evaded law enforcement detection, and was ultimately indicted entirely under the victim's persona rather than his own true identity. As a direct result of the defendant's multi-year scheme, the victim's true identity is heavily flagged within government, healthcare, and financial verification

databases as being tied to criminal activity, triggering flags on routine background screenings and executing basic transactional applications. The financial and administrative suffering personally inflicted by the defendant was so severe that the victim had to undergo the extraordinary remedy of obtaining an entirely new Social Security Number from the federal government, to attempt to disentangle the issues caused by the defendant. The defendant's actions directly destroyed the victim's credit rating, eliminated the victim's ability to qualify for loans or possibly rent a home, and may severely impair the victim's future employment opportunities.

Accordingly, because the defendant's fraudulent actions forced the victim to sever his lifelong legal identity to stop ongoing ruinous losses and to try to repair the substantial harm to his ability to obtain credit, the defendant undoubtedly "personally caused substantial financial hardship." Therefore, the defendant is legally disqualified from receiving the zero-point offender reduction. The government respectfully requests that paragraph 36 be amended to remove the 2-level downward adjustment, and the final guideline range be recalculated upward to reflect the true scope of the harm.

### III. OBJECTION TO THE OMISSION OF THE SOPHISTICATED MEANS ENHANCEMENT UNDER U.S.S.G. § 2B1.1(b)(10).

The United States objects to the Pre-Sentence Investigation Report's omission of a two-level enhancement for the use of sophisticated means. Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), a two-level increase is mandatory if the offense involved "sophisticated means," which includes especially complex or intricate conduct pertaining to the execution or concealment of the offense. The defendant's multi-layered exploitation of C.E.O.C.'s identity far exceeds a "garden-variety" identity theft scheme.

The defendant did not merely misappropriate an existing card or number; he meticulously built a parallel legal persona by manipulation of foundational documentation. The execution of

this scheme involved deliberate, multi-step actions designed to deceive multiple state and federal layers of verification. The defendant intentionally obtained a fraudulent birth certificate and fabricated a Social Security card in the victim's name. (See Exhibit C). Utilizing these fabricated foundational items, the defendant successfully manipulated the Florida Department of Highway Safety and Motor Vehicles to issue a legitimate, government-authenticated Florida Driver's License and used that identification to get the Social Security Administration to issue a real Social Security card under the victim's identity. (See Exhibit D). Then, armed with authentic, state-issued identification documents tied to the victim's data, the defendant expanded his scheme. He successfully targeted both private and public institutions by applying for an automobile loan, federal disability benefits via the Social Security Administration, and federal health care benefits through Medicare.

The Eleventh Circuit has affirmed the two-level enhancement for sophisticated means in cases where a Defendant used forged or altered foundational government documents to obtain genuine state-issued identification constitutes a highly sophisticated method of concealment and execution. *See United States v. Feaster,* 798 F.3d 1374, 1381 (11th Cir. 2015) ("Regardless of whether the defendant undertook affirmative acts of concealment, the scheme itself may be designed in a sophisticated way that makes it unlikely to be detected, allowing it to continue for an extended period and to impose larger losses."); *United States v. Ghertler,* 605 F.3d 1256 (11th Cir. 2010)(finding that totality of activities carried out over an extended period of time was sufficient to support the court's application of the sophisticated means enhancement even where aspects of the scheme were not sophisticated); *see also United States v. Campbell*, 491 F.3d 1306, 1315–16 (11th Cir. 2007) (affirming sentence and holding in tax case that use of campaign accounts and credit cards issued to other individuals constituted sophisticated means designed to

conceal defendant's fraud from authorities). Moreover, the Eleventh Circuit has found that the sophisticated means enhancement does not require a scheme to be entirely unique or brilliant; rather, it applies if the defendant's totality of conduct shows a greater level of planning or concealment than a typical or garden-variety fraud. *Id*. *See e.g. See e.g., United States v. Yue,* 186 F. App'x 872 (11th Cir.2006) ("sophisticated means" involves more than minimal planning) (*citing United States v. Humber*, 255 F.3d 1308, 1314 (11th Cir.2001)); *United States v. Kimbrough,* 297 F. App'x 960, 962 (11th Cir. 2008). Evaluating a scheme under U.S.S.G. § 2B1.1(b)(10)(C) requires the court to examine the offense conduct as a whole. There is "no requirement that each of a defendant's individual actions be sophisticated" on their own; rather, the enhancement applies if the "totality of the scheme was sophisticated." *United States v. Sosa*, 777 F.3d 1279, 1302 (11th Cir. 2015). Courts consider the level of planning and concealment against that of a typical baseline fraud. *See e.g. United States v. Humber*, 255 F.3d 1308, 1314 (11th Cir. 2001); *see also United States v. Kimbrough*, 297 F. App'x 960, 962 (11th Cir. 2008)(upholding the two-level sophisticated means enhancement where the scheme involved repetitive, coordinated steps to maximize deception over a multi-year timeline).

Here, the defendant did not execute a passive or typical identity theft offense, for example by misappropriating the Social Security Number of a deceased person or using a stolen identity one time. Instead, the defendant actively hijacked the identity of a living person and purposefully intertwined the victim's stolen information with his own inside government databases, making his multi-year fraud exceptionally difficult to detect. His activities included providing fabricated government documents to obtain legitimate government identification and then using this identity to obtain a car loan and to get significant government benefits, including medical coverage that allowed him to get a kidney transplant. His actions required deliberate planning, intricate

coordination across state and federal agencies, and execution over an extended timeframe which supports finding that he used sophisticated means. *See Ghertler*, 605 F.3d at 1267–68.

Accordingly, because the defendant deliberately fabricated a complex identification matrix to systematically defraud private lenders, state government, the Social Security program, and Medicare, the sophisticated means enhancement applies. This level of execution goes far beyond a baseline "garden-variety" fraud, explicitly meeting the parameters for sophisticated planning and concealment. The United States respectfully requests that a two-level enhancement under U.S.S.G. § 2B1.1(b)(10)(C) be applied, and the defendant's total offense level be adjusted upward.

**CONCLUSION**

WHEREFORE, the government respectfully requests that that the Court sustain these objections and 1) find that the government has established a restitution loss of $213,115.53 as directly admitted to by the defendant, alongside a thoroughly documented time-loss calculation of $3,976.80, and $179.36 for documented out-of-pocket mileage and administrative expenses, for a total victim restitution amount of $4,156.16 legally owed to the individual identity theft victim, C.E.O.C., under the Mandatory Victims Restitution Act; 2) find the defendant is statutorily disqualified from receiving the zero-point offender reduction under U.S.S.G. § 4C1.1(a)(6) because he personally caused substantial financial hardship to the victim; and 3) find the defendant's multi-layered fraud scheme and concealment qualifies for a sophisticated fraud scheme under U.S.S.G. § 2B1.1(b)(10)(C). Accordingly, the United States respectfully requests that the Court amend the Pre-Sentence Investigation Report to accurately reflect the true loss figures and appropriate guidelines, apply the mandatory two-level sophisticated means enhancement, deny the two-level zero-point offender reduction, and recalculate the defendant's final advisory guideline range upward to reflect the full measure of justice required by federal law.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date:  5/21/2026     By:  s/ Nikole Hiciano
                          Nikole Hiciano
                          Special Assistant United States Attorney
                          Florida Bar No. 844411
                          U.S. Attorney's Office
                          500 East Broward Blvd., Suite 700
                          Fort Lauderdale, Florida 33394
                          Tel.: 954-660-5153
                          Email: Nikole.hiciano.oneil@usdoj.gov



# Social Security Administration

Social Security Administration
Office of Central Operations Center for
Automation, Security and Integrity
6401 Security Boulevard
Baltimore, Maryland 21235

MEMORANDUM

Refer to:   FTL-24-00027-F

Date:        September 17, 2025

From:       Operation Support Branch Chief
            Office of Disability Operations

Subject:    SSN: ███████6781  BIC: HA Name: Carlos Orengo Cortes

            Request for Certified Payment Extract
            Request Dated: September 16, 2025

To:         Attn:  Krystle Kerr-Vasquez, Special Agent
            Social Security Administration
            Office of Inspector General
            Miramar, FL 33027

I hereby certify that the following Social Security benefits were certified for payment to Carlos Orengo Cortes under Social Security claim number ███████6781  (BIC: HA) for the period December 01, 2020, through Present.  The certified extracts were prepared without the folder, using Social Security records.  Mr. Orengo Cortes's Date of Entitlement to Social Security Disability Insurance (Title II) benefits was March 01, 2021. No benefits were paid or due before this date.

**GOVERNMENT
EXHIBIT**

**A**

**25-CR-20460**

Payments certified for Carlos Orengo Cortes for March 01, 2021, through April 23, 2021, were paid via direct deposit towels Fargo Bank, 255 2nd Ave S, MAC N9301-041, Minneapolis, MN 55479, (800) ███████ RTN: ███████13 ACCT: ███████████.

.

Payments certified for Carlos Orengo Cortes for April 23, 2021, through Present were paid via paper check to C████ E O██████C████ Lot 133 12401 W Okeechobee Rd, Hialeah Gardens, FL 33018-5908, (954) ███████

/s/Vincent Rawlings

---

Vincent W. Rawlings, Jr.
Branch Manager,  Security Integrity Branch
Management and Operations Support



# Social Security Administration

Refer to:   FTL-24-00027-F

TO WHOM IT MAY CONCERN:

The following Social Security benefits were certified for payment to Carlos Orengo Cortes under Social Security claim number ████6781, BIC: HA for the period of December 01, 2020, through Present and have not been reported as non-receipt items.

| Approximate Date of Payment | Amount | Represented Payment for |
|---|---|---|
| April 15, 2021 | 1571.00 | Prior Monthly Accrual (PMA) |
| May 03, 2021 | 683.40 | April 2021 |
| June 03, 2021 | 1422.00 | May 2021 |
| July 02, 2021 | 1391.50 | June 2021 |
| July 12, 2021 | 1570.50 | Prior Monthly Accrual (PMA) |
| August 03, 2021 | 1391.50 | July 2021 |
| September 03, 2021 | 1391.50 | August 2021 |
| October 01, 2021 | 1391.50 | September 2021 |
| November 03, 2021 | 1391.50 | October 2021 |
| December 03, 2021 | 1391.50 | November 2021 |
| January 03, 2022 | 1460.90 | December 2021 |
| February 03, 2022 | 1460.90 | January 2022 |
| March 03, 2022 | 1460.90 | February 2022 |
| March 15, 2022 | 222.00 | Prior Monthly Accrual (PMA) |
| April 01, 2022 | 1571.90 | March 2022 |
| May 03, 2022 | 1571.90 | April 2022 |
| June 03, 2022 | 1571.90 | May 2022 |
| July 01, 2022 | 1571.90 | June 2022 |
| August 03, 2022 | 1571.90 | July 2022 |
| September 02, 2022 | 1571.90 | August 2022 |
| October 03, 2022 | 1571.90 | September 2022 |
| November 03, 2022 | 1571.90 | October 2022 |
| December 02, 2022 | 1571.90 | November 2022 |
| January 03, 2023 | 1915.00 | December 2022 |
| February 03, 2023 | 1915.00 | January 2023 |
| March 03, 2023 | 1915.00 | February 2023 |
| March 21, 2023 | 250.00 | Prior Monthly Accrual (PMA) |
| April 03, 2023 | 2040.00 | March 2023 |
| May 03, 2023 | 2040.00 | April 2023 |
| June 02, 2023 | 2040.00 | May 2023 |
| July 03, 2023 | 2040.00 | June 2023 |
| August 03, 2023 | 2040.00 | July 2023 |

| Approximate Date of Payment | Amount | Represented Payment for |
|---|---|---|
| September 01, 2023 | 2040.00 | August 2023 |
| October 03, 2023 | 2040.00 | September 2023 |
| November 03, 2023 | 2040.00 | October 2023 |
| December 01, 2023 | 2040.00 | November 2023 |
| January 03, 2024 | 2096.00 | December 2023 |
| February 02, 2024 | 2096.00 | January 2024 |
| March 01, 2024 | 2096.00 | February 2024 |
| April 03, 2024 | 2096.00 | March 2024 |
| May 03, 2024 | 2096.00 | April 2024 |
| June 03, 2024 | 2096.00 | May 2024 |
| July 03 2024 | 2096.00 | June 2024 |
| August 02, 2024 | 2096.00 | July 2024 |
| September 03, 2024 | 2096.00 | August 2024 |
| October 03, 2024 | 2096.00 | September 2024 |
| October 21, 2024 | 1467.00 | Prior Monthly Accrual (PMA) |
| November 01, 2024 | 2259.00 | October 2024 |
| December 03, 2024 | 2259.00 | November 2024 |
| January 03, 2025 | 2296.00 | December 2024 |
| February 03, 2025 | 2296.00 | January 2025 |
| March 03, 2025 | 2296.00 | February 2025 |
| April 03, 2025 | 2296.00 | March 2025 |
| May 02, 2025 | 2296.00 | April 2025 |
| June 03, 2025 | 2296.00 | May 2025 |
| July 03, 2025 | 2296.00 | June 2025 |
| August 01, 2025 | 0.00 | July 2025 |
| September 01, 2025 | 0.00 | August 2025 |
| **Total paid to Carlos Orengo Cortes December 1, 2020, through Present** | **$99,719.70** | |
| | | |
| **Medicare Payments** | | |
| Medicare Part B | 738.60 | May 2021 Medicare Premium Deduction (PDR) |
| Medicare Part B | 1336.50 | May 2021 – December 2021 ($148.50 per month) |
| Medicare Part B | 2041.20 | January 2021 – December 2022 (170.10 per month) |
| Medicare Part B | 178.80 | January 2022 – December 2023 ($14.90 per month |
| Medicare Part B | 296.40 | January 2023  - December 2024 ($24.70 per month) |

| Approximate Date of Payment | Amount | Represented Payment for |
|---|---|---|
| Medicare Part B | 315.00 | January 2024 – July 2025   ($45.00 per month) |
|  |  |  |
| **Medicare Part B Total** | **$4,758.00** |  |
|  |  |  |
| Medicare Part D | 183.00 | June 2021 – November 2021 ($30.50 per month) |
| Medicare Part D | 397.20 | December 2021 – November 2022 ($33.10 per month |
|  |  |  |
| **Medicare Part D Total** | **$580.20** |  |
|  |  |  |
| **Total Medicare** | **$5,338.20** |  |

BALTIMORE, MARYLAND  21241
Refer to: FTL-24-00027-F

Krystle Kerr-Vasquez, Special Agent
Social Security Administration
Office of Inspector General
Miramar, FL 33027

CERTIFICATION OF EXTRACT FROM RECORDS

Pursuant to the provisions of Title 42, United States Code, Section 904, and the authority vested in me by 42 U.S.C. 902.  I hereby certify that I have legal custody of certain records, documents, and other information established and maintained by the Social Security Administration, pursuant to Title 42, United States Code, Section 405, and that the annexed is a true extract from such records in my custody as aforesaid.

I further certify that all signatures of the Social Security Administration officials on the annexed document(s) are genuine and made pursuant to the signers' official capacity.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the seal of the Social Security Administration to be affixed this 17th day of September 2025.

/s/Vincent Rawlings

Vincent W. Rawlings, Jr.
Branch Manager,  Security Integrity Branch
Management and Operations Support



SafeGuard
Services
LLC

CONFIDENTIALITY NOTICE:  This message, including any attachments, is for the sole use of the intended recipient(s) and may contain SGS Internal or SGS Confidential information.  Any unauthorized review, use, disclosure, or distribution is prohibited.  If you are not the intended recipient, please contact the sender, and destroy all copies of the original message.

Monique Butler
Special Agent
HHS.OIG.OI
7900 Oak Lane
Suite 200
Miami Lakes, FL 33016

Sender Name: Jay Leiva
Sender Phone Number: █████████

*The remainder of this page is intentionally blank.*



**SafeGuard**
**Services**
LLC

September 4, 2025

*DELIVERED VIA KITEWORKS*

Monique Butler
Special Agent
HHS.OIG.OI
7900 Oak Lane
Suite 200
Miami Lakes, FL 33016

Ref:    Request for Information
       C███ E. O█████ C████, et al
       UCM RFI-250903-00005

Dear Special Agent Butler:

Reference is made to your request for information received by SafeGuard Services, LLC on September 3rd, 2025.

Enclosed is the requested Medicaid data on the subject listed above.  This completes the request as nothing further remains outstanding.

*Note: Both beneficiaries are eligible for Medicaid, but only C███ E. O█████ C████ did not have any Medicaid claims for the time frame requested.*

Thank you for allowing us to assist you in fulfilling our mutual mission of protecting the Medicare and Medicaid Trust Fund.

Respectfully,

Laurie Tepperberg
RFI Team Lead
Southeastern Unified Program Integrity Contractor
SafeGuard Services, LLC
Enclosure

www.sgsdetect.com       *SGS Confidential*       *Page 2 of 2*
*T-UPIC-0003 Letterhead V10*
*3450 Lakeside Drive, Suite 201*
*Miramar, FL 33027*
*UCM RFI-250903-00005*       *Release Date:  10/7/2024*

 **Department of Health and Human Services**

# OFFICE OF INSPECTOR GENERAL
## OFFICE OF INVESTIGATIONS



Case Agent:  Monique Butler                                        Date:  9/12/2025

An investigative activity was conducted on 9/2/2025 by Special Agent Monique Butler.  The following was the nature of the activity:

On 09/02/2025, an official request for information was submitted to the Southeastern Unified Program Integrity Contract, SafeGuard Services LLC (SGS) to obtain Medicare and Medicaid data for C███ E. O██████ C███ (O██████ C█████).  SGS returned medical data that confirms that OBREGA CORTES, is a Medicare recipient, but not a Medicaid recipient.

According to Medicare records, O██████ C█████ resides at 12401 W. Okeechobee Road, Lot 133, Hialeah, Florida 33018.  His social security number is ████6781, he was born on ████████, and the last four of the MBI is QN78.

Claims submitted to Medicare for services rendered to O██████ C█████ were queried for the date range 12/01/2020 to 8/29/2025. The SGS report lists 37 providers for O██████ C█████, and the sum of provider paid claims as $108,057.63 for that same date range. This total is a combination of Medicare's Part A, Part D, DME, Part B, and Ambulance claim types. The total billed amount was listed as $3,425,195.21.

| | | |
|---|---|---|
| Investigative Activity conducted on 9/2/2025 | At 7900 Oak Lane, Ste 200, Miami Lakes, FL 33016 | |
| By Monique Butler | SA Phone Number ████████ | |
| Date Prepared 9/12/2025 | By Monique Butler | Case Number |

*This document, including any attachments and information contained therein, is the property of HHS OIG and is for OFFICIAL USE ONLY. The original and any copies of the report must be appropriately controlled and maintained. Disclosure to unauthorized persons without prior written approval of the Deputy Inspector General for Investigations or a designee is strictly prohibited and may subject the disclosing party to liability. Unauthorized persons may include, but are not limited to, individuals referenced in the report, contractors, and individuals outside the HHS. Public disclosure is determined by the Freedom of Information Act (Title 5, U.S.C., Section 552) and the Privacy Act (Title 5, U.S.C., Section 552a).*

**OI-3A (08/2020)**

## VICTIM IMPACT STATEMENT

Name: ▮▮▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮

Telephone Number: 513-▮▮▮▮▮▮▮▮

If you need additional space for **any** question, please attach additional sheet of paper or write on the back of the page.

**How have you and members of your family been affected overall by this crime?**

I HAVE SPENT OVER 120 HOURS AND other RESOURCES; Attempting to RESOLVE the CONSEQUENCES OF this CASE. I COULD NOT BUY A HOUSE AS I HAD PLANNED to DUE to the mess this CREATED with my CREDIT AND SSN.

**How has the crime affected you and your families lifestyle?**

WE still live IN A HIGH-RENT PAYING HOME, HAVING less INCOME to SPEND ON HEALthiER food options AND UNABLE to place ANY MONEY into SAVINGS. WE live PAYCHECK-to-PAYCHECK AND FEAR ANY UNEXPECTED life-EXPENSES.

**Has the crime affected your ability to work, make a living, run a household, go to school, etc?**

NOT these DIRECTLY, But "making-A-living": YES! IF I HAD BEEN ABLE to BUY A HOUSE YEARS AGO iN 2023, I would HAVE BEEN IN A much BETTER fiNANCIAL POSItion NOW iN 2026.

**Have you experienced any of the following reactions to the crime: Please realize these are normal reactions to a traumatic event.**

✓ Anger ✓ Anxiety ✓ Fear ___ Grief ✓ Guilt ✓ Numb ___ Sleep Loss ___
✓ Nightmares ___ Chronic Fatigue ✓ Depression ___ Forgetfulness ___ Trouble
Concentrating

Other Reactions: IDENtity CRiSiS & CONfusioN ; fiNANCiAl DECLiNE

**Have you or your family gone to therapy or counseling as a result of the crime? Please explain.**

YES. I HAVE through "BEtter HELP". I HAVE ALWAYS suffered from DEPRESSION & ANXiety. THiS MADE it DECLiNE AND I sought theRAPY ONCE MORE (out-of-pocket).

**Were you physically injured as a result of the crime? If so, please describe your injuries and any medical treatment received.**

No.

**Do you feel the defendant continues to be a threat to you, your family or the community?**

I HOPE NOT, But I DON't HAVE ASSURANCE ON wether the iMPACT HAS ENDED -OR- if I will BE DEALiNG with this LONG-tERM.

**What are your thoughts regarding the sentence the Court should impose on the defendant?**

→

Rev 9/99

GOVERNMENT
EXHIBIT

B

25-CR-20460

THE SENTENCE SHOULD ENSURE the thief DOES NOT commit
A CRIME like this AGAIN AND HOPEFULLY RE-PAYS the victims
So that JUSTICE is PROPERLY SERVED.

**Is there anything else you would like the Judge to know?**
MY TAXES miGHt be AUDITED this YEAR DUE to my NEW SSN provided by the SSA
OFFICE. Being Hispanic with A NEW SSN MAKES ME A 'RED FLAG' suspect for groups like
ICE

## FINANCIAL IMPACT STATEMENT

I have incurred the following expenses associated with the criminal case:

**Medical** expenses_____ Yes __✓__ No   Amount of medical expenses **not** covered by insurance: _____
_____
** Number of doctor's visits to date: _____   ** Number of future anticipated doctor's visits: ___
_____

Name and phone number of Medical Doctor: _____   _____
____
Name

**Counseling** expenses __✓__ Yes _____ No   Amount of counseling expenses **not** covered by insurance:
_ALL_   ** Number of Counseling sessions to date: ___30 +___
** Number of counseling sessions per week: ____/____ (E.g. how often do you
attend)
** How long is the counseling session: ___½ HR___ (E.g. ½ hr, 1 hr etc)
** Number of future counseling sessions anticipated: _UNKNOWN_

Name and phone number of Counselor or Counseling Center: _MEGHAN GRIFFIN_   _____
(THROUGH BETTER HELP APP.)                                          Name
      Phone number

**Lost Income/Wages** _____ Yes __✓__ No   Amount of lost income/wages **not** covered by employer :
      (ex: unable to work because of the crime, court appearances/attendance, had doctor's
visits, counseling)

      ** Number of days lost from work: _____   Your hourly wage: _____

**Property Lost, Stolen or Damaged**: __✓__ Yes _____ No   Amount **not** covered by insurance : _N/A_
_____Please describe property: _THIEF STOLE CLOSE to $100K from my SSI retirement fund._
_____

**Other expenses** __✓__ Yes _____ No   Amount of other expenses **not** covered by insurance: _$200_
_____Please describe other expenses: _GAS MONEY AND PRINTER FEES while filing police REPORT,_
_going to the SSA office, going to PRINT forms AND DOCUMENTS, going to the DMV AND_
_many other places to RESOLVE the ENDLESS tasks of REPORTING the CRIME AND UPDATING_
_my SSN with COUNTLESS COMPANIES AND AGENCIES..._
Name and phone number of Insurance: _____   _____

Rev 9/99

_____            Name                                Phone

number

Check here if you do **not** have any insurance coverage ___✓___ (NO INSURANCE FOR identity theft)

**Have you filed a claim with the Crime Victim's Compensation Board?** ___✓___ Yes _____ No

I declare under penalty of law that the above information is true and correct to the best of my knowledge.

Signed by: ██████████████████████     C███ E███ O██ C██████

            Signature of victim or guardian        Print name of victim or guardian

For:   C███ E.O██ G██████        03 | 02 | 2026

         Name of victim              Date

**PLEASE PROVIDE DOCUMENTATION OF LOSS!**

Rev 9/99